**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

**LYNDA M. WOODS**                          *          **CIVIL ACTION NO. 05-2153**

**VERSUS**

**JO ANNE B. BARNHART, COMMISSIONER**          *          **MAGISTRATE JUDGE HAYES**
**OF SOCIAL SECURITY**

## MEMORANDUM RULING

Before this Court, on consent from the parties and pursuant to the standing order of the

District Judge, is an Appeal from a decision of the Commissioner of Social Security

("Commissioner") filed on behalf of petitioner Lynda M. Woods ("Woods").  For the reasons

assigned herein, the decision of the Commissioner is hereby **AFFIRMED, and this matter is**

**DISMISSED with prejudice.**

Introduction

Woods filed an application for disability benefits on May 7, 2002, alleging a disability

onset date of January 7, 2002, due to chronic back pain from a herniated disc that had required

surgery, a major depressive disorder, diabetes, hypertension, and obesity.  (Tr. 97, 173).  The

Commissioner denied Woods' claims initially and on reconsideration.  Woods properly requested

a hearing which was held before an Administrative Law Judge (ALJ), and on July 8, 2003, the

Commissioner's denial was affirmed.  Woods appealed the ALJ's decision, providing new

evidence of surgery on the herniated disc in her back, and the Appeals Council remanded the

ALJ's decision for additional consideration in light of the evidence.  Tr. 20.

On June 24, 2005, after conducting a second hearing, a different ALJ denied Woods'

claim, finding that (1) Woods' impairments, while severe under the Commissioner's regulations,

did not meet those in the Listing, 20 C.F.R. Part 404, Subpt. P, App. 1; (2) Woods retained the

residual functional capacity (RFC) to perform a significant range of light work; and (3) given her

RFC, Woods could perform a significant number of unskilled jobs in the national economy.  (Tr.

28-9).  The Appeals Council affirmed the ALJ's decision, and Woods presented this appeal.

Woods alleges two errors in the ALJ's June 25, 2005, decision.  First, she claims that the ALJ improperly concluded that her impairments were not severe and debilitating for the twelve months required by law.  Second, she avers that the ALJ ignored the opinion of a physician regarding her emotional impairments and thus, in determining her RFC, did not properly consider the impairments in conjunction with her physical ailments.

## Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards.  *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  At no time should the Court "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities.  In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity.  If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry.  If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps.  At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted).  The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that

finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Durational Requirement

Woods claims that the ALJ erred when he concluded that her impairments, while "undoubtedly" disabling for several months following her back surgery in July 2003, did not last for the requisite twelve months. Tr. 26. Woods' argument is two-fold: she claims, one, that the ALJ erred in finding that she was capable of performing light work by February 2004 and thus not disabled, and, two, that the ALJ failed to consider that she was disabled several months prior to her surgery in July 2003.

In coming to his conclusion, the ALJ, after creating a narrative of all of the medical evidence, pointed to the treating and examining physicians' consensus that Woods "had a good result from her lumbar surgery"; recent reports that Woods "was doing well, had no difficulty ambulating without assistance, and her lumbar spine was stable"; and, most notably, reports from Dr. Bailey, the physician who performed Woods' surgery, that Woods was doing well in February 2004 and that by July 2004 she was capable of performing light work. Tr. 26. The ALJ rejected opinions from two physicians' -- Bailey and Dr. Hebert, one of Woods' treating physicians -- that Woods was disabled based on the opinions' recency in relation to Woods' surgery and inconsistencies created by later favorable opinions. Woods contends that the ALJ based his durational finding solely on a report from Dr. Holladay, who, at the request of the Commissioner, examined Woods on November 3, 2004, sixteen months after her surgery, and noted that she was not in need of additional surgery and that she could essentially perform a wide range of light work.

As noted above, the SSA defines "disability" in terms of how long an individual suffers

from an impairment that is so severe that the individual cannot engage in any substantial gainful activity. An individual must suffer from such a severe impairment for twelve (12) continuous months. 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of proof with respect to the severity and duration of her impairments, as well as with the first four-steps of the Commissioner's sequential analysis. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987); 20 C.F.R. § 404.1520(e). A claimant cannot satisfy her burden of proof by relying on inferences and mere suppositions; she must point to specific medical records and other evidence supporting her claim of a disability. With respect to the durational requirement of a "disability," a claimant's evidence must support the conclusion that the alleged impairments lasted or can be expected to last for at least twelve months. "Conflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ." *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

Beginning with the first part of Woods' argument, the ALJ's decision that Woods was capable of performing light work as of February 2004, at the earliest, was based on a consideration of all the evidence and resolution of the conflicts therein. While the ALJ conceded that Woods' impairments were indeed disabling for several months after her surgery in July 2003, the ALJ noted Bailey's opinion in February 2004 that Woods was doing well and had even attempted to return to work. Bailey's prior post-surgery opinions all indicated that the fusion procedure had gone well and that Woods was recovering nicely; none of Bailey's reports suggest any complications or permanent disability. Furthermore, the ALJ properly credited the opinions of Bailey, the presiding surgeon, over those of Hebert, who opined in December 2003 that Woods "has essentially a failed lumbar spine fusion." Tr. 448. Given this evidentiary conflict, the ALJ, to the extent that he actually did, properly relied on Holladay's opinions given after

reviewed Woods' medical records and performed a physical examination.[1]  The evidence the ALJ

cited is such that a reasonable person could agree with his findings; therefore, his decision that

Woods' could perform light work as of February 2004 is based on substantial evidence.

Woods' second argument is that she was disabled several months prior to her surgery.

Although Woods' surgery was performed in July 2003, the only noteworthy medical evidence

prior to that date is an opinion of Dr. Ledbetter dated March 4, 2003, which the ALJ noted in his

narrative.  Ledbetter's opinion was mixed regarding the severity of Woods' lumbar impairment

and did not provide a basis to conclude that Woods was disabled as of that date.  However, even

if it could be safely said that Woods was disabled as of March 2003, she still would not have met

the twelve-month durational requirement in light of the ALJ's determination that she could

perform light duty work as of February 2004.  It was Woods' burden to provide reliable medical

evidence supporting her contention that she was disabled before her surgery in July 2003, and the

ALJ did not err in concluding that she had not provided sufficient evidence to satisfy the

durational requirement for a disability finding.

<u>Woods' Depression</u>

A review of the ALJ's decision indicates that he gave full consideration to Woods'

depression, but reasonably found that it, alone and in combination with her other impairments,

did not prevent Woods from engaging in light work.  The primary basis for the ALJ's conclusion

was the April 2005 opinion of Dr. Williams, a consultative psychologist, given after an interview

---

[1] Woods' contended that the ALJ should have ignored Holladay's opinion because of Woods' testimony during the hearing that Holladay performed only a cursory examination. Credibility judgments regarding a claimant's testimony are reserved exclusively to an ALJ and may not generally be disturbed on appeal.  *See Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  In addition, Holladay's report and attached medical source statement indicate a thorough and considered examination of Woods and her medical records.

of Woods and a review of her psychological records.[2]  Williams' medical source statement, which the ALJ frequently referred to, provided the following summary:

> At the time of the interview, her understanding was intact.  She is able to remember simple instructions and carry through with work-like procedures.  Memory was intact.  Sustained concentration was adequate for interview purposes.  Pace is mildly to moderately limited by depression and chronic pain.  Her ability to sustain a normal routine without special accommodation will be significantly limited due to the combination of depression and chronic pain.  Persistence was adequate.  Social interaction was not limited.  She is able to relate adequately with others without needing reminders to maintain socially appropriate behaviors.  She can adhere to basic standards of neatness and decorum.  Adaptation was age-appropriate but limited by chronic pain.

Tr. 498.  Williams assigned Woods a Global Assessment of Functioning ("GAF") of 60.  Given that Woods was found to be able to perform a wide range of unskilled light-work jobs, she was required to be able to perform jobs that "require little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).

In light of the limited capacity needed to perform the jobs assigned to her, as well as the mild to moderate limitations noted in Williams' report, the ALJ properly found that Woods' depression was not disabling.  Although Williams expressed some concern about Woods' condition, especially if her chronic pain continued, he repeatedly observed that she retained the ability to perform simple tasks, possessed an accurate memory, and could comply with simple instructions.  Tr. 496-498.  These capabilities permitted Woods to perform unskilled job such as a cashier or ticket seller, two jobs that a vocational expert identified at the hearing.  Tr. 74.

Finally, the ALJ did consider Woods' impairments in combination as required under the

---

[2] Woods notes other medical records indicating that she had been treated for depression along with other impairments.  However, most of these records merely list Woods' impairments and her prescribed medications.  The other records, namely Dr. Ragsdill's psychiatric evaluation, were noted by the ALJ in the opening of his discussion of Woods' depression.  Tr. 25.

SSA. *See* 42 U.S.C. § 423(d)(1)(A); *Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir, 1985). The ALJ noted that Woods suffered from multiple impairments -- hypertension, degenerative disc disease, obesity, diabetes, and depression -- that were "severe" within the meaning of the Commissioner's regulations, but not severe enough to support an automatic finding of disabled under 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ noted the medical evidence regarding each of these impairments and provided a thorough analysis of the most limiting ones: degenerative disc disease and depression. In determining whether her impairments precluded Woods from engaging in substantial gainful activity, the ALJ properly relied on Woods' surgeon's favorable opinions beginning in February 2004 and the consultative physchologist's opinion that Woods retained the mental acuity to perform unskilled work.

Conclusion

For the reasons stated above, the Commissioner's decision to deny benefits is hereby **AFFIRMED, and this matter is DISMISSED with prejudice.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of August, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE